# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| **MARK A. YACKO,** | **Case No. 1:23-cv-01578-PAB** |
| **Plaintiff,** | |
| **-vs-** | **JUDGE PAMELA A. BARKER** |
| **GENERAL MOTORS COMPANY,** *et al.*, | |
| **Defendants.** | **MEMORANDUM OPINION AND ORDER** |

This matter comes before the Court upon Defendant Jim Gaeschke's[1] ("Gaeschke") Motion to Dismiss Plaintiff Mark A. Yacko's ("Yacko") Complaint, filed on November 3, 2023.  (Doc. No. 10.)  On December 4, 2023, Yacko filed a Brief in Opposition to Gaeschke's Motion to Dismiss, and on December 18, 2023, Gaeschke filed a Reply Brief in Support of his Motion.  (Doc. Nos. 15, 18.)  Accordingly, Gaeschke's Motion to Dismiss is ripe for a decision.

For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Gaeschke's Motion to Dismiss.  (Doc. No. 10.)

## I.      Background

### A.      Factual Background

Yacko's Complaint sets forth the following allegations.

Defendant General Motors ("GM") is a corporation headquartered in Detroit, Michigan, with manufacturing plants headquartered in Cuyahoga County, Ohio.  (Doc. No. 1-1 at ¶ 2.)  Defendant

---

[1] Yacko's Complaint spells Gaeschke's name as "Gaeske."  (*See* Doc. No. 1-1.)  Gaeschke's filings, however, spell his name "Gaeschke."  (*See, e.g.*, Doc. No. 10-1.)  The Court will use Gaeschke's own spelling.

GM and Defendant Gaeschke are persons and employers within the meaning of Ohio Revised Code § 4112.01(A) and (B).  (*Id.* at ¶¶ 3, 4.)

Yacko is a fifty-nine-year-old white male resident of Medina County, Ohio.  (*Id.* at ¶ 1.) Yacko was hired by GM in 1996 at its Lordstown Plant and became a contract supervisor before being transferred to his most recent job at GM's plant in Parma, Ohio (hereinafter "GM Parma") as a Group Leader in Maintenance.  (*Id.* at ¶¶ 5, 6.)  A Group Leader in Maintenance is responsible for supervising and scheduling the work of 12 maintenance technicians on GM's third shift.  (*Id.* at ¶ 5.)

Yacko was a very highly compensated employee making over $120,000.00/year plus benefits and reasonably expected to retire after at least 30 years at full pension before he was terminated.  (*Id.* at ¶ 18.)  In 2022, Yacko's job performance review noted the following:

> Mark's greatest strength is his knowledge of the pressroom and his ability to motivate the [union] trades. He has the respect of his team members . . . Mark not only helps our shift perform better, but due to his hard work sets first shift up to get better numbers too. Mark is one of the most knowledgeable persons I've worked with. Another shift lead said this about Mark's impact in department 55 in a recent post, "I call your impact on 3rd shift as the Yacko Effect! There is nothing you and your team can't work through."

(*Id.* at ¶ 23 (alteration in original).)  Yacko was never disciplined by GM in almost 3 decades of loyal service to the company and had never been placed on a performance improvement plan ("PIP").  (*Id.* at ¶ 9.)

GM was offering early retirement buy-outs starting in January 2023.  (*Id.* at ¶ 12.)  On January 31, 2023, GM issued the following press release:

> GM said it will reduce its staff in 2023, part [*sic*] of its effort to cut $2 billion in costs over the next two years. But unlike a number of major companies that have announced layoffs in recent months, company officials stressed GM would not be shrinking through layoffs. *Instead the reduction would be handled through attrition*. GM did not disclose how many jobs might be trimmed, with Jacobson saying the company would end this year "slightly lower" in headcount. . . . .

2

(*Id.* at ¶ 14 (emphasis in original).)  According to Yacko, "[a]ttrition" means that the motivation to leave the company is in the mind of the employee, not the employer.  (*Id.* at ¶ 15.)  Yacko, being a senior manager, was not excluded from consideration as a candidate for GM's companywide attrition plans.  (*Id.*)  Yacko alleges that GM's use of manager "attrition" as a planned labor force reduction event makes it the functional equivalent of an "RIF," i.e., a reduction in force.  (*Id.*)  Yacko claims that courts have held that an RIF can, in execution, violate Ohio Revised Code § 4112.02(A) based on age discrimination and "can be illegal for other reasons."  (*Id.*)

It was disappointing to GM that Yacko did not independently choose to leave the company despite GM's management "[RIF] by way of attrition" strategy.  (*Id.* at ¶ 16.)  Indeed, GM claimed that it wanted to reduce overhead costs and, after its attrition strategy failed with respect to Yacko, he "was targeted for outright termination by Gaeschke . . . for an inferred pretextual reason because of his age and high salary, which is a proxy for age discrimination."  (*Id.*)

Yacko was terminated from his most recent GM employment on or about March 1, 2023, "by Defendant Gaeschke acting for his own interest and that of GM."  (*Id.* at ¶ 7.)  Gaeschke claimed that Yacko was being fired for "behavior performance reasons" and when a demand for an explanation by Yacko was made, GM would not provide one or "offer an honest and reasonable excuse."  (*Id.* at ¶¶ 8, 19.)  According to Yacko, it is therefore clear that Gaeschke created and published a false, defamatory excuse to GM management for his termination for an ulterior purpose.  (*Id.* at ¶¶ 8, 19, 35.)

Yacko was also an at-will employee.  (*Id.* at ¶ 25.)  GM had made progressive discipline a benefit of continued employment that Yacko had a right to expect as part of his at-will contract with GM.  (*Id.* at ¶ 28.)  Defendants did not provide Yacko with progressive discipline to save his job as

3

was offered to younger employees.  (*Id.* at ¶¶ 9, 24.)[2]  Because GM did not provide Yacko with progressive discipline, in spite of the fact that Yacko did not commit a disciplinary offense to merit it, GM breached a material term of its agreement with Yacko.  (*Id.* at ¶ 29.)  Yacko was always eligible for progressive discipline if he committed a disciplinary offense and was ready, willing, and able to work at all times relevant.  (*Id.*)

About one week after Yacko's termination, GM's chief executive officer, Mary Barra, announced that the company was offering retirement buy-outs for managers with five or more years of service.  (*Id.* at ¶ 10.)  According to Yacko, "GM had to have created or acted on a preexisting list of eligible managers to carry out this intention, and thus had to have known the ages, rate of pay, and tenure dates of each manager on that list well before acting on it."  (*Id.*)  In addition, "Gaeschke would know or should have known of GM's plan to offer buy-outs to senior managers before he terminated Yacko's employment in March 2023."  (*Id.* at ¶¶ 7, 11.)

On March 9, 2023, GM admitted the following in a press release:

> *General Motors said in January* it would save $2 billion without planning any layoffs. But on Thursday it said it was looking for workers to leave voluntarily. In a regulatory filing, the automaker said it was looking to save costs through attrition and a voluntary separation program in which eligible employees would get a lump sum payment and other severance based on how long they worked at the company. The buyouts would cost the company $1.5 billion before taxes this year. The voluntary separation program will be offered to all US salaried employees with at least five years of service and global executives that have been with the company for at least two years . . . . In a statement, the company said that employees are "strongly encouraged to consider" the program.

(*Id.* at ¶ 13 (emphasis in original).)

---

[2] Yacko refers to "the Defendant" here but does not specify which Defendant he is referring to.  (Doc. No. 1-1 at ¶ 24.) The Court construes this as referring to both Defendants.

4

GM posted a job opening for Yacko's former position about 30 days after his termination date, "which makes GM's plan for RIF by attrition not legitimate with respect to Yacko." (*Id.* at ¶ 17.)  By May 8, 2023, Yacko learned that he had been replaced "by an inexperienced younger manager making far less than [Yacko] was, to wit, Roger East." (*Id.*)

### B.    Procedural History

On June 11, 2023, Yacko filed suit against GM and Gaeschke in the Court of Common Pleas of Cuyahoga County, Ohio.  (Doc. No. 1-1.)  In his Complaint, Yacko sets forth the following three Counts: (1) age discrimination in violation of Ohio Revised Code § 4112.02 against both GM and Gaeschke (Count One); (2) breach of employment contract against both GM and Gaeschke (Count Two); and (3) defamation by libel and slander against Gaeschke (Count Three).  (*Id.* at ¶¶ 33–35.)  On August 14, 2023, Defendant GM[3] removed Yacko's lawsuit to this Court.  (Doc. No. 1.)

On November 3, 2023, Gaeschke filed his Motion to Dismiss, seeking dismissal of Yacko's claims against him only.  (Doc. No. 10.)  On December 4, 2023, Yacko filed a Brief in Opposition, and on December 18, 2023, Gaeschke filed a Reply.  (Doc. Nos. 15, 18.)

Accordingly, Gaeschke's Motion to Dismiss is ripe for a decision.

## II.    Standard of Review

Gaeschke moves to dismiss all of Yacko's claims as asserted against him under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Pursuant to Rule 12(b)(6), the Court accepts Yacko's factual

---

[3] In its Notice of Removal, GM noted that Yacko had attempted to serve Gaeschke at its Parma Plant and contended that, because Gaeschke did not work in Ohio and did not have a physical presence in the state since before Yacko filed his Complaint, Yacko had "failed to properly serve Gaeschke." (Doc. No. 1 at PageID# 2 n.1; Doc. No. 1-4.)  On September 5, 2023, the Court ordered Yacko to respond to this contention.  (Non-Document Order, Sept. 5, 2023.)  After Yacko filed a Response indicating that Gaeschke had authorized GM's counsel to accept service on his behalf, the Court ordered Yacko to re-attempt service upon Gaeschke via GM's counsel.  (Doc. No. 6; Non-Document Order, Sept. 20, 2023.)  Yacko completed service on Gaeschke on October 18, 2023.  (Doc. No. 13.)

allegations as true and construes the Complaint in the light most favorable to Yacko.  *See Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).  To survive a motion to dismiss under this Rule, "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'"  *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)).

The measure of a Rule 12(b)(6) challenge—whether a complaint raises a right to relief above the speculative level—"does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'"  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555–56).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.  Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Gunasekera*, 551 F.3d at 466 (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)) (internal quotation marks omitted).  Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it

does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

### III.    Analysis

#### A.    Age Discrimination (Count One)

In Count One, Yacko alleges that Gaeschke terminated him for a "false reason" in order to prevent him from "remaining employed until retirement" and "obtaining a retirement wage buy out while he is at retirement age."  (Doc. No. 1-1 at ¶ 33.)  Yacko also alleges that, if he did commit a disciplinary offense, Gaeschke did not provide him with the progressive discipline that was offered to "other and younger managers so as to save his job," thereby constituting "age discrimination in violation of [Ohio Revised Code §] 4112.02 *et seq.*"  (*Id.*)

Gaeschke argues in his Motion to Dismiss that the Complaint does not allege that he was Yacko's "employer" under Section 4112.02.  (Doc. No. 10-1 at PageID# 118.)  Relying on 2021 amendments to Section 4112, Gaeschke contends that he was not Yacko's "employer" and, therefore, he can no longer be sued in his individual capacity for age discrimination under Section 4112.02.  (*Id.* at PageID#s 118–19.)

In his Opposition, Yacko counters that he does refer to Gaeschke "as an employer" as defined in Section 4112.01(A)(1).  (Doc. No. 15 at PageID# 148.)  Yacko also concedes that Section 4112 removes managers (such as Gaeschke) from the scope of the "employer" definition in the context of discrimination suits brought under Section 4112.02(A)–(F) "unless he is in fact an employer in his own right."  (*Id.*)  Nevertheless, he asserts that supervisors are still subject to suits under Section 4112.02(J) for aiding and abetting discrimination.  (*Id.* at PageID#s 147–48.)  In any event, Yacko

7

claims that "he does not need to prove that [Gaeschke] is an 'employer' under [O.R.C. §] 4112.02(A) to hold him liable for age discrimination."  (*Id.* at PageID# 148.)

In his Reply, Gaeschke argues that an aiding and abetting claim under Section 4112.02(J) is a separate cause of action from a discrimination claim under Section 4112.02(A), and that Yacko's assertion of an aiding and abetting claim here is a "recharacterization" that is unsupported by the Complaint. (Doc. No. 18 at PageID# 160.)  Gaeschke maintains that Yacko's Complaint only alleges a discrimination claim against him, and that Yacko cannot use Section 4112.02(J) as an "end-run" around the prohibition against manager discrimination lawsuits.  (*Id.* at PageID# 161.)  Lastly, Gaeschke insists that an employee cannot aid and abet himself in discriminating against another.  (*Id.*)

The Court addresses each of Yacko's discrimination-related claims, in turn, below.

### 1. Discrimination under Section 4112.02(A)

Beginning with Yacko's age discrimination claim, Ohio Revised Code Section 4112.02 enumerates various "unlawful discriminatory practices."  *See* O.R.C. § 4112.02.  In the context of employment privileges and termination, Section 4112.02(A) provides that it is an unlawful discriminatory practice:

> For any employer, because of the . . . age[] . . . of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.

O.R.C. § 4112.02(A).

Ohio's Employment Law Uniformity Act ("ELUA") took effect on April 15, 2021, and introduced a provision to Section 4112 that reads in pertinent part:

> [N]o person has a cause of action or claim based on an *unlawful discriminatory practice relating to employment* described in division (A)(24)(a) of section 4112.01

8

of the Revised Code *against a supervisor, manager, or other employee of an employer unless that supervisor, manager, or other employee is the employer.*

O.R.C. § 4112.08(A) (emphasis added). *See Reeves v. P&E Logistics, Inc.*, 2022 WL 899688, at *3 n.1 (S.D. Ohio Mar. 28, 2022).

Section 4112.01(A)(24)(a) defines "unlawful discriminatory practice relating to employment" to mean an unlawful discriminatory practice prohibited by Section 4112.02(A)–(F). O.R.C. § 4112.01(A)(24)(a). Accordingly, post-ELUA, supervisors and managers "cannot be held individually liable for employment discrimination" unless the supervisor or manager is also an "employer." *See Sherman v. Pub. Emps. Ret. Sys.*, 2023 WL 6307632, at *11 (S.D. Ohio Sept. 28, 2023).

Post-ELUA, "employer" is defined in the Section 4112 context to mean, in relevant part, "any person employing four or more persons within the state." O.R.C. § 4112.01(A)(2); *see also* Sub. H.B. 352, 133d Gen. Assemb. (Ohio 2020); *Sherman*, 2023 WL 6307632, at *11. A "person" is relevantly defined as "one or more individuals, . . . corporations, legal representatives, . . . and other organized groups of persons" and "also includes, but is not limited to, any owner, . . . agent, [and] employee." O.R.C. § 4112.01(A)(1); *see Spahija v. Rae-Ann Holdings*, 2022 WL 17993026, at *3 (N.D. Ohio Dec. 29, 2022).

In this case, Yacko sues Gaeschke in his individual capacity, and the parties do not dispute that Gaeschke was his manager or supervisor. (Doc. No. 1-1 at ¶ 4; Doc. No. 10-1 at PageID# 118; Doc. No. 15 at PageID# 147.) The parties dispute, however, whether Gaeschke was Yacko's statutory employer. (Doc. No. 10-1 at PageID#s 118–19; Doc. No. 15 at PageID# 148 (Yacko asserting that he "refers to [Gaeschke] as an employer" under Section 4112.01).) Yacko does not dispute that, if Gaeschke is not his statutory employer, his discrimination claim under Section 4112.02(A) is

9

precluded by Section 4112.08(A) of the ELUA.  (Doc. No. 10-1 at PageID#s 118–19; Doc. No. 15 at PageID# 147.)

The Court concludes that the Complaint does not demonstrate that Gaeschke is a statutory employer.[4]  As noted above, an "employer" is "any person employing four or more persons within the state."  O.R.C. § 4112.01(A)(2).  Yacko does not allege how many individuals, or employees, or other "persons" Gaeschke employs.  The Complaint does indicate that Gaeschke "is a person and employer" within the meaning of Section 4112.01(A), but this is a legal conclusion that is not supported by any factual allegation that Gaeschke employs "four or more persons."  (Doc. No. 1-1 at ¶ 4.)  Accordingly, Yacko has failed to allege that Gaeschke is a statutory employer under Section 4112.01.

Because Gaeschke is not a statutory employer, under the post-ELUA framework of Section 4112, it therefore follows that any age discrimination claim Yacko presents against Gaeschke pursuant to Section 4112.012(A) is barred under Section 4112.08(A).  *Spahija*, 2022 WL 17993026, at *2; (*see also* Doc. No. 15 at PageID# 147 (Yacko acknowledging that Section 4112.08(A) brings non-employer managers outside the scope of Section 4112.02(A)).).

Accordingly, the Court **GRANTS** Gaeschke's Motion to Dismiss on Yacko's claim for age discrimination under Section 4112.02(A) (Count One) against Gaeschke only.

## 2. Aiding and Abetting under Section 4112.02(J)

---

[4] Given the recency of the ELUA amendments, there is limited Ohio state or federal case law interpreting or applying the "employer" exception to liability preclusion in Section 4112.08(A).  *See Spahija*, 2022 WL 17993026, at *2–3.

The Court next turns to Yacko's contention that the Complaint asserts a claim for aiding and abetting under Section 4112.02(J). (Doc. No. 15 at PageID# 148.) Section 4112.02(J) outlaws aiding and abetting, making it an unlawful discriminatory practice:

> For any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, to obstruct or prevent any person from complying with this chapter or any order issued under it, or to attempt directly or indirectly to commit any act declared by this section to be an unlawful discriminatory practice.

O.R.C. § 4112.02(J).

In this case, Yacko alleges that Gaeschke *himself* "illegally targeted" Yacko for discrimination. (Doc. No. 1-1 at ¶ 20.) Yacko also alleges that, despite being a "loyal, subordinate[,] [and] professional employee," Gaeschke himself "create[ed] a false excuse" to terminate him, communicated this excuse to GM's management, and replaced him with a lesser-experienced and lesser-paid younger employee. (*Id.* at ¶¶ 33, 35.) Further, Yacko describes all of Gaeschke's conduct as "amount[ing] to age discrimination," and alleges that Gaeschke "had a duty at all times to protect [Yacko] from age discrimination." (Doc. No. 1-1 at ¶¶ 11, 33.) The words "aiding" and "abetting," however, do not appear in the Complaint. Therefore, Yacko clearly directs Count One toward Gaeschke's own age discrimination, as opposed to any "aiding" or "abetting" of GM's alleged discrimination. Accordingly, while Yacko presents a cause of action for age discrimination, the Complaint contains no allegations that Gaeschke "aided" or "abetted" any such age discrimination under Section 4112.02(J). (*See* Doc. No. 1-1.)

Yacko's argument that his citation of "[Section] 4112.02 *et seq.*" in the Complaint is sufficient to allege an aiding and abetting discrimination claim is not persuasive. While it is true that "Section 4112.02 *et seq.*" includes Section 4112.02(J), Count One of the Complaint specifically and

11

exclusively alleges "age discrimination."  (Doc. No. 1-1 at ¶ 33.); *see Gravely v. Thiel*, 2023 WL 6049323, at *3 (N.D. Ohio Sept. 15, 2023) (finding *et seq.* citation to Section 4112.02 to include Section 4112.02(J)).

Yacko's assertions that Gaeschke aided and abetted GM's age discrimination are new and raised for the first time in his Opposition.  The Court cannot and does not consider these allegations in evaluating Gaeschke's Motion to Dismiss.  *See Tangas v. Int'l House of Pancakes, LLC*, 2016 WL 614006, at *4 (N.D. Ohio Feb. 16, 2016) ("[I]t is hornbook law that a plaintiff cannot amend a complaint through arguments in an opposition brief."); *Guzman v. U.S. Dep't of Homeland Sec.*, 679 F.3d 425, 429–30 (6th Cir. 2012).

Accordingly, the Court **GRANTS** Gaeschke's Motion to Dismiss on Yacko's claim for age discrimination and/or aiding and abetting under Section 4112.02 (Count One) against Gaeschke only.

## B.  Breach of Contract (Count Two)

In Count Two, Yacko alleges that "all Defendants . . . prevent[ed]" Yacko from "having access to the employment benefit of a termination wage buy-out," and that Defendants' conduct therefore breached an employment contract that entitled Yacko to participate in company benefits.  (Doc. No. 1-1 at ¶ 34.)  Gaeschke argues that Yacko's breach of contract claim fails because Gaeschke and Yacko were not parties to a contract, and that Yacko has failed to identify any contract that he allegedly breached.  (Doc. No. 10-1 at PageID#s 115, 119–20.)[5]

---

[5] Gaeschke also argues that Yacko's claim should be dismissed because Yacko was an at-will employee and could therefore be terminated at any time for any reason.  (Doc. No. 10-1 at PageID# 119.)  Gaeschke further maintains that Yacko's claim fails because he failed "to attach the purported contract to the Complaint."  (*Id.* at PageID# 120.)  Because the Court dismisses Yacko's breach of contract claim against Gaeschke based on Yacko's concessions, the Court need not address these arguments.

In his Opposition, Yacko concedes that he has "not plead[ed] that there is a contract between Gaeschke and Yacko."  (Doc. No. 15 at PageID# 148.)  Yacko further contends that Paragraph 34, the paragraph establishing Count Two, "is directed at Defendant GM [and] not Gaeschke," and insists that "in that respect [Gaeschke's] motion is moot."  (*Id.*)  Yacko elsewhere confirms that "[Gaeschke] is not a Defendant in the Second Cause of Action."  (*Id.* at PageID# 149.)  In his Reply, Gaeschke urges the Court to grant as unopposed Gaeschke's Motion to Dismiss as to Count Two.  (Doc. No. 18 at PageID# 162.)

The Court finds that Yacko has abandoned any claim for breach of contract that he may have had against Defendant Gaeschke.  Although Count Two refers to the "conduct of *all* Defendants" (Doc. No. 1-1 at ¶ 34 (emphasis added)), Yacko has conceded that this breach of contract claim is not presented against Gaeschke.[6]  Therefore, to the extent that Yacko's breach of contract claim implicates Gaeschke, it will be dismissed.  *See McKeny v. Middleton*, 2016 WL 4944763, at *2 (S.D. Ohio Sept. 16, 2016) (dismissing claim that plaintiff conceded did not apply to certain defendants).

Accordingly, the Court **GRANTS** Gaeschke's Motion to Dismiss as to Yacko's breach of contract claim (Count Two) against Gaeschke only.  (Doc. No. 10.)

### C.     Defamation (Count Three)

In Count Three, Yacko asserts that Gaeschke defamed him by "creating a false excuse for terminat[ing] Yacko's employment which he published to GM management [*sic*] for his own malicious purpose."  (Doc. No. 1-1 at ¶ 35.)  According to Yacko, Gaeschke's publishing to GM

---

[6] GM did not respond to Yacko's arguments or oppose Gaeschke's dismissal from this Count.

13

management that Yacko was fired for "behavior performance reasons" despite Yacko being a "loyal, subordinate professional employee . . . amounts to libel and slander." (*Id.* at ¶¶ 8, 35.)

In his Motion to Dismiss and Reply, Gaeschke argues that Yacko's defamation claim should be dismissed for two reasons. First, Gaeschke insists Yacko's Complaint does not identify defamatory statements, that any statement was "false," or to whom any statement was made. (Doc. No. 10-1 at PageID# 121; Doc. No. 18 at PageID# 163.) Second, Gaeschke asserts that any alleged statement that he made to GM's management is protected by a "qualified privilege" that Yacko fails to overcome. (Doc. No. 10-1 at PageID#s 120–22.)

In Ohio, defamation occurs "when a publication contains a false statement 'made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade, business or profession.'" *Am. Chem. Soc. v. Leadscope, Inc.*, 978 N.E.2d 832, 852 (Ohio 2012) (quoting *Jackson v. City of Columbus*, 883 N.E.2d 1060, 1064 (Ohio 2008)). Generally, to establish a prima facie claim for defamation, a plaintiff "must show (1) that a false statement of fact was made, (2) that the statement was defamatory, (3) that the statement was published, (4) that the plaintiff suffered injury as a proximate result of the publication, and (5) that the defendant acted with the requisite degree of fault in publishing the statement."[7] *Pincus v. Pincus*, 127 N.E.3d 393, 397 (Ohio App. 8th Dist. 2018)

---

[7] Some Ohio state appellate and federal district courts have attributed to the publication element a requirement that the statement be "unprivileged" or "without privilege." *Fisher v. Ahmed*, 153 N.E.3d 612, 627 (Ohio App. 9th. Dist. 2020) (collecting cases); *see Bolton v. Delta Air Lines*, 182 F. Supp. 3d 768 (S.D. Ohio 2016) (using the phrase "published without privilege"); *but see Susan B. Anthony List v. Driehaus*, 779 F.3d 628, 633 (6th Cir. 2015) (requiring only that "the statement was published"). Because, as is discussed below, "the lack of privilege is not an essential element of defamation," the Court will not consider privilege in evaluating whether Yacko has sufficiently pleaded a prima facie claim for defamation. *Fisher*, 153 N.E.3d at 624–25 (citing *Hahn v. Kotten*, 331 N.E.2d 713 (Ohio 1975)).

(citing *Am. Chem. Soc.*, 978 N.E.2d 832) (quotation marks omitted).[8]  Unlike mistake or fraud, "defamation is not subject to the heightened pleading requirements of Federal Rule [] 9(b)." *Suarez Corp. v. CBS, Inc.*, 1994 WL 142785, at *5 (6th Cir. Apr. 19, 1994) (applying Rule 8(a) to defamation claim); *Casale v. Nationwide Children's Hosp.*, 2012 WL 13024407, at *5 (S.D. Ohio Aug. 2, 2012); *Bolton v. Delta Air Lines*, 182 F. Supp. 3d 768, 772 (S.D. Ohio 2016). *See also* Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").

Here, with regard to Yacko's prima facie defamation claim, Gaeschke only disputes whether Yacko has sufficiently alleged that Gaeschke made a false statement of fact or that any statement was published.  (Doc. No. 10-1 at PageID# 121.)[9]  Gaeschke does not contest whether the statement that Yacko was terminated for "behavior performance reasons" was, in fact, made or whether Yacko suffered any injury.  The Court will address the disputed elements, in turn, below.

### 1.    False Statement

Turning to the first element of Yacko's prima facie defamation claim, as mentioned, Gaeschke contends that Yacko has not identified any statement that he made.  In his Opposition, Yacko identifies the "false statement" as Gaeschke's statement to GM's management that Yacko was "being

---

[8] Defamation can take the form of either slander or libel.  *Tharp v. Hillcrest Baptist Ch. of Columbus*, 204 N.E.3d 709, 723 (Ohio App. 10th Dist. 2022) (citation omitted).  "Slander" refers to "spoken defamatory words," while "libel" refers to "written or printed defamatory words." *Id.* (citing *Savoy v. Univ. of Akron*, 15 N.E.3d 430 (Ohio App. 10th Dist. 2014)) (quotation marks omitted); *Burns v. Rice*, 813 N.E.2d 25, 32 (Ohio App. 10th Dist. 2004).  The prima facie elements are identical between the two forms of defamation.  *Tharp*, 204 N.E.3d at 723; *Mitchell v. Fujitec Am., Inc.*, 518 F. Supp. 3d 1073, 1090 (S.D. Ohio 2021) (citing *Fisher*, 153 N.E.3d at 624).  In this case, Yacko asserts both.  (Doc. No. 1-1 at ¶ 35.)

[9] Gaeschke appears to dispute whether he acted with the requisite degree of fault based on actual malice.  (Doc. No. 10-1 at PageID# 121.)  This issue is relevant to the defense of qualified privilege, which is a different issue than whether Yacko has established a prima facie case of defamation and is one that the Court will address below.  *See Roe v. Franklin County*, 673 N.E.2d 172, 181 (Ohio App. 10th Dist. 1996) (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964)) (observing that, when qualified privilege is raised, "the requisite degree of fault rises [from ordinary negligence] to actual malice").

fired for behavior performance reasons." (Doc. No. 15 at PageID# 150 (citing Doc. No. 1-1 at ¶¶ 8, 19.) Gaeschke argues in his Reply that the Complaint does not allege that the "behavior performance reasons" statement was false. (Doc. No. 18 at PageID# 163.) As Gaeschke raises Yacko's failure to allege the falsity of the "behavior performance reasons" statement for the first time in his Reply (and Yacko did not request leave to file a surreply), Yacko does not address this argument.

Neither party provides or cites to any authority as to what constitutes a "false" statement under Ohio law. In a defamation action, a plaintiff must allege a false statement, an essential element of a prima facie claim. *See Hartman v. Kerch*, 217 N.E.3d 881, 896 (Ohio App. 8th Dist. 2023). A "false statement" is one that "sets forth matters which are not true," or "[s]tatements without grounds in truth or fact." *Serv. Emp. Int'l Union Dist. 1199 v. Ohio Elections Comm.*, 822 N.E.2d 424, 430 (Ohio App. 8th Dist. 2004) (citation omitted) (alteration in original); *Labban v. Mahon*, 2021 WL 6777029, at *2 (6th Cir. Sept. 23, 2021) (citing *Susan B. Anthony List v. Driehaus*, 779 F.3d 628, 632 (6th Cir. 2015)). A statement, therefore, is not a "false statement" if, "even though it is misleading and fails to disclose all relevant facts, the statement has some truth in it." *Horenstein, Nicholson & Blumenthal, L.P.A. v. Hilgeman*, 178 N.E.3d 71, 106 (Ohio App. 2d Dist. 2021).

While a defamation complaint "must allege the substance of the allegedly defamatory statements," "they need not be set out verbatim." *Doe v. Univ. of Dayton*, 2018 WL 1393894, at *5 (S.D. Ohio Mar. 20, 2018) (citing *Hedrick v. Ctr. for Comprehensive Alcoholism Treatment*, 454 N.E.2d 1343 (Ohio 1982)). Thus, a plaintiff at the Rule 12(b)(6) stage need only allege that a defamatory statement was false to survive dismissal. *See Swartz v. DiCarlo*, 2014 WL 8097138, at *3 (N.D. Ohio Oct. 21, 2014), *report and recommendation adopted sub nom. Swartz v. Di Carlo*, 2015 WL 1022073 (N.D. Ohio Mar. 6, 2015) (finding sufficient allegations that defendant's

16

statements were "false" and "not true"); *Prior v. Mukasey*, 2008 WL 5076821, at *2 (N.D. Ohio Nov. 21, 2008) (dismissing defamation claim because plaintiff only alleged that statements were "[u]nflattering" and "embarrassing . . . but not false"); *Baez v. City of Cleveland*, 2020 WL 5982301, at *5 (N.D. Ohio Oct. 8, 2020) (finding defamation claim insufficiently pleaded where plaintiff did "not allege that the [statement] was false").

The Court concludes that Yacko has sufficiently alleged that Gaeschke's statement to GM's management that Yacko was terminated for "behavior performance reasons" was false. Gaeschke's contention in his Reply that Yacko does not allege that the statement was false overlooks several allegations in the Complaint. (Doc. No. 18 at PageID# 163.) Indeed, even Gaeschke himself points out Yacko's allegation that Gaeschke "creat[ed] a *false* excuse for termination." (Doc. No. 10-1 at PageID# 121 (citing Doc. No. 10-1 at ¶ 35) (emphasis added).) Yacko's Complaint includes many allegations that indicate that Gaeschke's purported justification for his termination was false, e.g., that it was "nonsensical," "not grounded in fact," a "false reason," and a "false excuse." (Doc. No. 1 at ¶¶ 22, 33, 35.) As other Ohio federal courts have found, allegations that a statement was "false" and "untrue" are sufficient for the purpose of evaluating a defamation claim under Rule 12(b)(6). *See Swartz v. Di Carlo*, 2014 WL 8097138, at *2–3 (N.D. Ohio Mar. 6, 2015) (finding sufficient allegations that statements were simply "not true" and "false"); *Mitchell v. Fujitec Am., Inc.*, 518 F. Supp. 3d 1073, 1093–94 (S.D. Ohio 2021) (holding as sufficient allegations that defendant's statement that plaintiff sexually harassed her was "false and defamatory," "unfounded," a "false charge," and a "false allegation"). The Court finds that Yacko's allegations likewise suffice.

Even beyond these express allegations of falsity, falsity can be inferred from Yacko's Complaint. Yacko alleges that Gaeschke claimed to have terminated him for "behavior performance

17

reasons," which can be reasonably inferred to imply unsatisfactory behavior and/or performance. (Doc. No. 1-1 at ¶ 8.)  Yacko's Complaint also alleges that he "has never been disciplined in almost 3 decades of loyal service" and "never been placed on a performance improvement plan."  (*Id.* at ¶ 9.)  Yacko further alleges that he was given a very positive performance review in 2022, the year before he was terminated.  (*Id.* at ¶ 23.)  Taken as a whole, the above allegations are sufficient to allege that Yacko did not have "behavior performance" problems, as Gaeschke's purported statement implies.  (*Id.* at ¶ 35.)  Thus, Gaeschke's alleged statement that Yacko's performance and behavior were to the contrary, i.e. of such concern as to warrant Yacko's termination, could reasonably be viewed as not based in fact and therefore false.    Accordingly, the Court finds that Yacko has adequately alleged that Gaeschke's statement to GM concerning the reasons for Yacko's termination was false, and Gaeschke's Motion to Dismiss cannot be granted on this basis.

### 2.    Publication

As to the publication element, Gaeschke disputes whether Yacko has alleged that the "behavior performance reasons" statement was made to a third party.  In his Motion, Gaeschke observes that Yacko alleges that Gaeschke "made a false statement to GM management for his own malicious purpose," but discounts this as a legal conclusion.  (Doc. No. 10-1 at PageID# 122.)

In response, Yacko insists that Gaeschke "said to GM [that Yacko] was being fired for behavior performance reasons."  (Doc. No. 15 at PageID# 151 (emphasis omitted).)  Yacko further elaborates that Gaeschke, "acting as an individual[,] communicated the excuse to GM and GM adopted it."  (*Id.*)

Gasechke replies that neither the Complaint nor Yacko's Opposition "identify to whom th[e] statement was made."  (Doc. No. 18 at PageID# 163.)  According to Gaeschke, Yacko "appears [to

be] alleging [that] Gaeschke provided th[e] behavior performances explanation to [Yacko] at the time of his termination."  (*Id.*)  According to Gaeschke, provision of the explanation to Yacko about Yacko does not constitute defamation because Yacko "is not a third party."  (*Id.*)

Again, neither party introduces nor cites to any authority for the establishment of this element in a prima facie claim.  As the Supreme Court of Ohio has explained:

> The publication of defamatory matter is an essential element to liability for defamation. "Publication of defamatory matter is its communication intentionally or by a negligent act to one other than the person defamed." 3 Restatement of the Law 2d, Torts (1965), Section 577(1)). *Any* act by which the defamatory matter is communicated to a third party constitutes publication. *Id.* at Comment *a*. Also, it is sufficient that the defamatory matter is communicated to one person only, even though that person is enjoined to secrecy. See *id.* at Comment *b*.

*Hecht v. Levin*, 613 N.E.2d 585, 587 (Ohio 1993) (emphasis in original).  The *Hecht* court further observed that "publication of defamation consists in communicating it to a person or persons other than the person libeled."  *Id.* (citing *Hahn v. Kotten*, 331 N.E.2d 713, 718 (Ohio 1975)).  Thus, "publication" is a "word of art" that "includes any communication by the defendant to a third person." *Welling v. Weinfeld*, 866 N.E.2d 1051, 1057 (Ohio 2007) (citing Restatement of the Law 2d, Torts, § 652D, Comment *a*) (quotation marks omitted); *Lawson v. AK Steel Corp.*, 699 N.E.2d 951, 955 (Ohio App. 12th Dist. 1997).

"[D]efamation primarily protects only the interest in reputation."  *Missionaries of the Sacred Heart, Inc. v. Ohio Dep't of Youth Servs.*, 2020 WL 7232092, at *4 (Ohio App. 10th Dist. Dec. 8, 2020) (citing 3 Restatement of the Law 2d, Torts, § 577(1)) (quotation marks omitted).  Therefore, "unless the defamatory matter is communicated to a third person there has been no loss of reputation," and "[i]t is enough that it is communicated to a single individual other than the one defamed."  *Id.*;

*see also Hecht*, 613 N.E.2d at 587 ("[P]ublication does not take on its more common connotation of wide dissemination.").

In the Complaint, Yacko alleges that Gaeschke made the statement that Yacko was being fired for "behavior performance reasons." If Gaeschke communicated this statement to an entity other than Yacko, i.e. a third party, it would constitute publication under Ohio defamation law. Here, Yacko alleges that Gaeschke published the "false excuse for termination" (i.e., the statement that Yacko was terminated for "behavior performance reasons") to "GM management." (Doc. No. 1-1 at ¶ 35.) The question, therefore, is whether the allegation that Gaeschke published the allegedly defamatory statement to "GM's management" is sufficiently specific to allege publication to a "third party."

This is not an instance where there are *no allegations* of a third party to whom a communication was made. *See, e.g.*, *Varney v. InfoCision, Inc.*, 2013 WL 5520395, at *8 (S.D. Ohio Oct. 2, 2013) (finding publication requirement unsatisfied where allegation that "it is obvious that the confidentiality of [the statement] was compromised by managers and others at [defendant's] Gallipolis, Ohio, location" said "nothing of whether that particular component . . . was published to a third party"); *Witherspoon v. Gen. Elec. Co.*, 2017 WL 1365723, at *12 (N.D. Ohio Apr. 14, 2017) (allegedly defamatory letter not published where plaintiff's manager sent letter to plaintiff and copied manager of human resources but there was no evidence that "letter was published to anyone else" or that company "published [letter] to individuals 'who had no need to know'").

Nor is this a case wherein the plaintiff specifies by particular occupation or name the individuals to whom the communication was made. *See, e.g.*, *Braun v. Ultimate Jetcharters, Inc.*, 2013 WL 623495, at *1, *13 (N.D. Ohio Feb. 19, 2013) (plaintiff plausibly alleged defamation where she alleged that coworkers made defamatory statement to "most, if not all, of the captains [plaintiff]

20

flew with"); *Shepard v. Griffin Servs., Inc.*, 2002 WL 940110, at \*2, \*9 (Ohio App. 2d Dist. May 10, 2002) (genuine issue of fact where defamatory statement was made at plaintiff's "termination meeting" and a "termination letter was seen by several [representatives] of [defendant company]"); *Kanjuka v. MetroHealth Med. Ctr.*, 783 N.E.2d 920, 925–26, 930 (Ohio App. 8th Dist. 2002) (reversing JNOV in plaintiff's favor where jury found that plaintiff's coworker made defamatory statements to nurses "Diane Wolf, Barbara Ruda, and Susan Harwood").

Rather, this is a case where the allegations set forth in the Complaint do not align squarely with any of these cases. *See Shock v. St. Rita's Med. Ctr.*, 2012 WL 5354571, at \*5 (N.D. Ohio Oct. 29, 2012) ("It is unclear as to whether a plaintiff with a claim for defamation must provide the specific identity of the speaker when a defendant is an employer of multiple employees.").

For the following reasons, the Court holds that Yacko has sufficiently alleged that Gaeschke published the allegedly defamatory statement at issue. Here, Yacko clearly alleges in his Complaint that Gaeschke communicated the statement—the "reasons" for which Yacko was terminated—to "GM management," i.e., a third party. (Doc. No. 1-1 at ¶ 35.) Gaeschke acknowledges and cites this allegation in his Motion to Dismiss. (Doc. No. 10-1 at PageID#s 121–22.) Under the plausibility standard for pleading a "third party," this is sufficient to survive dismissal.

Gaeschke cites the case of *Cooper v. Mount Carmel Health System* to support his argument that Yacko has not identified "*to whom* th[e] statement was made," and that therefore Yacko's claim is inadequate. (Doc. No. 18 at PageID# 163 (emphasis in original) (citing 2015 Ohio Misc. LEXIS 13338 (Franklin Cnty. Aug. 18, 2015).)  *Cooper* is distinguishable from the instant case for two reasons.  First, *Cooper* dealt not with a motion to dismiss at the pleadings stage, but instead with a motion for summary judgment and the evidentiary burdens associated therewith.  *See generally*

21

*Cooper,* 2015 Ohio Misc. LEXIS 13338. Second, the *Cooper* court found the plaintiff's claim to be deficient because he failed to identify "a single third party" that received the statements at issue and therefore were "actually published to a third party." *Id.* at *19. In the case at bar, however, Yacko alleges that Gaeschke's statement was "published to GM['s] management," which, as noted above, identifies a third party, albeit a conceivably large one. (Doc. No. 1-1 at ¶ 35.)

Because "defamation is not subject to the heightened pleading requirements of Federal Rule [] 9(b)," Yacko did not need to specify the particular members of GM's management to whom Gaeschke communicated his statement. *Suarez Corp. v. CBS, Inc.*, 23 F.3d 408 (Table), 1994 WL 142785, at *5 (6th Cir. Apr. 19, 1994) (observing that, "[w]hile technical rules of pleading existed for defamation at common law, the liberalized requirements of the federal rules only require "notice pleading" and applying Rule 8(a) to defamation claim); *Re/Max Int'l, Inc. v. Smythe, Cramer Co.*, 265 F. Supp. 2d 882, 893 (N.D. Ohio 2003); *Bolton v. Delta Air Lines*, 182 F. Supp. 3d 768, 772 (S.D. Ohio 2016). In other words, it is enough that Yacko has alleged that Gaeschke communicated the statement "to GM's management" to constitute publication. *See MedChoice Fin., LLC v. ADS Alliance Data Sys.*, 857 F. Supp. 2d 665, 673–74 (S.D. Ohio 2012) (counter-plaintiff sufficiently identified third parties with allegation that "MedChoice made false statements about the Bank *to companies that originated loans* for MedChoice") (emphasis added); *QFS Transp., LLC v. Infinity Transp. Servs., Inc.*, 2019 WL 2396261, at *3 (S.D. Ohio June 6, 2019) (sufficient allegation that "the third parties to whom QFS made the alleged statements" were "*Defendants' owner-operators and drivers*") (emphasis added), *report and recommendation adopted*, 2019 WL 2717899 (S.D. Ohio June 28, 2019); *Georgandellis v. Holzer Clinic, Inc.*, 2009 WL 1585772, at *18–19 (S.D. Ohio June 5, 2009) (sufficient allegation of statement to third party where defendants communicated statement to

22

company's other shareholders); *Mitchell v. Fujitec Am., Inc.*, 518 F. Supp. 3d 1073, 1096 (S.D. Ohio 2021) (sufficient allegation for prima facie defamation case that coworker spread "workplace gossip" to colleagues).

Accordingly, Gaeschke's Motion to Dismiss on this basis is without merit and is rejected.

### 3.    Qualified Privilege

The Court has concluded that Yacko has established a prima facie case of discrimination. Gaeschke nevertheless argues that his alleged statement that Yacko was terminated for "behavior performance" reasons is protected by "qualified privilege." (Doc. No. 10-1 at PageID#s 120–22.) Gaeschke further asserts that Yacko cannot overcome the privilege because he has failed to sufficiently allege that the alleged defamatory statement at issue was made with actual malice. Lastly, Gaeschke argues that "an improper motive is insufficient to prove malice." (*Id.* at PageID# 122.)

In his Opposition, Yacko insists that Gaeschke's words "were not spoken negligently," and that Gaeschke's statement that Yacko was terminated for "behavior performance" reasons was a "false excuse." (Doc. No. 15 at PageID# 151.) Gaeschke replies that the allegations show that the statement, even if made "to other managers at [GM] (e.g., human resources personnel)," is protected under qualified privilege. (Doc. No. 18 at PageID# 163.)

In Ohio, if a plaintiff successfully establishes a prima face of discrimination, the defendant "may then invoke various defenses, if available." *Hahn v. Kotten*, 331 N.E.2d 713, 718 (Ohio 1975); *see also Jackson v. City of Columbus*, 883 N.E.2d 1060, 1064 (Ohio 2008). One of these such defenses is privilege. *Hahn*, 331 N.E.2d at 718. A privileged communication is one which, "except for the occasion on which or the circumstances under which it is made, would be defamatory, and actionable." *Costanzo v. Gaul*, 403 N.E.2d 979, 981 (Ohio 1980). Privileged publications are divided

into two general classes: "those which are absolutely privileged, and those which are qualifiedly or conditionally privileged." *Id.* An absolute privilege affords "complete protection," whereas "a qualified or conditional privilege affords protection only in the absence of ill motive or malice in fact." *Id.*

A publication is qualifiedly privileged when it is "fairly made by a person in the discharge of some public or private duty, whether legal or moral, or in the conduct of his own affairs, in matters where his interest is concerned." *Hahn*, 331 N.E.2d at 718. Such a privilege "is recognized in many cases where the publisher and the recipient have a common interest, and the communication is of a kind reasonably calculated to protect or further it." *Id.* Thus, under Ohio law, "[e]ven a false statement may be protected by a qualified privilege." *Blesedell v. Chillicothe Telephone Co.*, 811 F.3d 211, 224 (6th Cir. 2016) (citing *City of Columbus*, 883 N.E.2d at 1064).

When a qualified privilege is asserted, courts must first determine whether the privilege indeed exists. *Fisher v. Ahmed*, 153 N.E.3d 612, 626 (Ohio App. 9th Dist. 2020) (citing *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 651 N.E.2d 1283 (Ohio 1995)). The essential elements of a qualified privilege are "good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only." *Hahn*, 331 N.E.2d at 719; *see also Buckner v. Gilliland*, 846 F. Supp. 2d 799, 804 (N.D. Ohio 2012) (citing *McNett v. Worthington*, 2011 WL 4790759, at *3 (Ohio App. 3d Dist. Oct. 11, 2011)). In the employment context, generally, "a communication made in good faith on a matter of common interest between an employer and an employee, or between two employees concerning a third employee, is protected by qualified privilege." *Sygula v. Regency Hosp. of Cleveland E.*, 64

24

N.E.3d 458, 467 (Ohio App. 8th Dist. 2016) (citation omitted). *See also Evely v. Carlon Co., Div. of Indian Head, Inc.*, 447 N.E.2d 1290, 1292 (Ohio 1983).

If a qualified privilege exists, the privilege can be lost if the communication is not "made in a reasonable manner and for a proper purpose," or is made to "someone outside of the qualified privilege." *Bisbee v. Cuyahoga Cnty. Bd. of Elections*, 2001 WL 204174, at *5 (Ohio App. 8th Dist. Mar. 1, 2001); *Stearns v. Ohio Sav. Ass'n*, 472 N.E.2d 372, 374 (Ohio App. 8th Dist. 1984); *Burrows v. Fuyao Glass Am. Inc.*, 2017 WL 626189, at *8 (S.D. Ohio Dec. 8, 2017). The privilege can also be lost when a plaintiff alleges actual malice. *Costanzo*, 403 N.E.2d at 983.

"Actual malice" is present when a statement is made "with the knowledge that the statements are false or with reckless disregard of whether they were false or not." *Id. See also Smith v. Klein*, 492 N.E.2d 852, 856–57 (Ohio App. 8th Dist. 1985); *Jacobs v. Frank*, 573 N.E.2d 609, 614 (Ohio 1991). "Reckless disregard" applies when "a publisher of defamatory statements acts with a 'high degree of awareness of their probable falsity,' or when the publisher 'in fact entertained serious doubts as to the truth of his publication." *City of Columbus*, 883 N.E.2d at 1064 (quoting *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964), and *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)) (internal citations omitted).

The Court concludes that Gaeschke does not demonstrate that the Complaint establishes that he is entitled to qualified privilege.[10] The Complaint contains allegations showing that, once

---

[10] Although Yacko does not raise this argument, the Court notes that, because qualified privilege is an affirmative defense, some Ohio state courts do not require a plaintiff to allege facts sufficient "to prove actual malice in the complaint." *See Fisher*, 153 N.E.3d at 626–27 (Ohio App. 9th Dist. 2020) (citing *Molnar v. City of Green*, 140 N.E.3d 1208, 1215 (Ohio App. 9th Dist. 2019)); *Gallagher v. Stonegate Mtge. Corp.*, 2013 WL 6858040, at *5 (Ohio App. 8th Dist. Dec. 26, 2013). In the federal courts, as a general matter, courts do not grant motions to dismiss based on an affirmative defense. *See Barney v. PNC Bank (In re Estate of Barney)*, 714 F.3d 920, 926 (6th Cir. 2013) (courts should only grant a motion to dismiss based on an affirmative defense if "the plaintiff's own allegations show that a defense exists that legally defeats the claim for relief"). Nevertheless, the Court observes that the majority of federal courts interpreting and applying Ohio

25

Gaeschke fired Yacko, Gaeschke communicated the reason for this firing to GM's management. (Doc. No. 1-1 at ¶¶ 8, 35.)  The reason for an employee's termination would likely be a matter of common interest between an employee/employer and an employee concerning a third employee. *Gray v. Allison Div., Gen. Motors Corp.*, 370 N.E.2d 747, 750 (Ohio App. 8th Dist. 1977).  But while it can be reasonably inferred (and it is undisputed at this stage) that Gaeschke published the statement regarding why Yacko was terminated to a proper party, in a proper manner, and for the limited purpose of providing a reason for termination to GM's management, the Court finds that Yacko has sufficiently alleged that Gaeschke did not communicate the statement in good faith.  *See Hensley v. Wester Chester Township*, 2022 WL 4621432, at *2, *8 (S.D. Ohio Sept. 30, 2022) (finding that qualified privilege "ostensibly applies" where township's attorney, hired to perform an investigation, provided an allegedly falsified report to township, which then published said report).  According to Yacko, Gaeschke "creat[ed] a false excuse" when he told GM's management that Yacko was terminated for "behavior performance" reasons.  (Doc. No. 1-1 at ¶¶ 8, 35.) This is sufficient to allege that Gaeschke's statement was not made in good faith and was done for the purpose of ensuring Yacko's separation from his employment with GM.  *See Buckner v. Gilliland*, 846 F. Supp. 2d 799, 804 (N.D. Ohio 2012); *Georgandellis*, 2009 WL 1585772, at *18–19 (finding allegation that

---

law appear to do so.  *See, e.g.*, *Carovac v. Lake Cnty. Bd. of Dev. Disabilities/Deepwood*, 2020 WL 5423966, at *5 (N.D. Ohio Sept. 9, 2020); *Bolton v. Delta Air Lines*, 182 F. Supp. 3d 768, 772 (S.D. Ohio 2016); *Rennick v. Provident Bank*, 2008 WL 696893, at *7 (S.D. Ohio Mar. 12, 2008); *Mitchell v. Fujitec Am., Inc.*, 518 F. Supp. 3d 1073, 1093–94 (S.D. Ohio Feb. 8, 2021) (requiring allegations of malice but denying motion to dismiss); *but see MedChoice Fin., LLC v. ADS Alliance Data Sys.*, 857 F. Supp. 2d 665, 674 (S.D. Ohio 2012) ("[P]rivilege is an affirmative defense to a defamation claim and [a claimant] need not plead facts to defeat an affirmative defense."); *Doe v. United Consumer Fin. Servs.*, 2001 WL 34350174, at *9 n.1 (N.D. Ohio Nov. 9, 2001) ("Although an allegation of malice may be sufficient to defeat a qualified immunity defense on a motion to dismiss, the Court finds that it is not a requirement. Thus, Plaintiff's failure to assert malice here does not defeat her claim at this stage.").  The Sixth Circuit has not weighed in on whether qualified privilege may defeat a defamation claim at the motion to dismiss stage.  This Court follows the majority of Ohio federal courts requiring allegations of actual malice to defeat an assertion of qualified privilege at the pleadings stage.

statements were made "falsely and maliciously, and thereby not in good faith," sufficient to defeat

qualified privilege defense at motion to dismiss stage (internal quotation marks omitted)).

Moreover, even assuming *arguendo* that a qualified privilege applied to Gaeschke's alleged

statement, the Court would conclude that the Complaint sufficiently alleges actual malice.[11]  The

Complaint contains allegations that GM attempted to secure Yacko's departure by attrition, and when

this strategy failed, Gaeschke, his superior, "targeted [him] for outright termination" because of "his

age and high salary."  (Doc. No. 1-1 at ¶ 16.)  Yacko also alleges that Gaeschke terminated Yacko

"for a false reason to prevent him from remaining employed until retirement, to prevent him from

obtaining a retirement wage buy out while he is at retirement age."  (*Id.* at ¶ 33.)  In other words,

reading these allegations in the light most favorable to Yacko, Gaeschke, in an attempt to quickly

reduce overhead costs, wanted Yacko gone, if not by attrition, then by outright termination.  To

complete this objective after Yacko did not voluntarily agree to leave GM, Gaeschke "creat[ed] a

false excuse [for terminating Yacko] . . . for his own malicious purpose."  (*Id.* at ¶¶ 19, 35.)  Certainly,

"creating a false excuse" to eliminate Yacko from the workforce implies that Gaeschke knew or had

reckless disregard for whether the purported reason for his termination (i.e., "behavior performance")

was false.  *See Armstrong v. Shirvell*, 596 F. App'x 433, 447 (6th Cir. 2015) (citing *St. Amant*, 390

U.S. at 732) (affirming district court's denial of judgment as matter of law on actual malice issue

---

[11] The Court observes that Gaeschke's contention that "motive" and "ill will" cannot establish actual malice may be correct.  *Compare Dupler v. Mansfield J. Co., Inc.*, 413 N.E.2d 1187, 1190–91 (Ohio 1980) ("Actual malice may not be inferred from evidence of personal spite, ill-will, or intention to injure on the part of the writer."), *with Hahn v. Kotten*, 331 N.E.2d 713, 721 (Ohio 1975) (plaintiff does not defeat qualified privilege "unless he goes further and shows that in using same, defendant was moved by actual malice, such as ill will, spite, grudge or some ulterior motive").  Federal courts interpreting Ohio law have also come to different conclusions on the issue.  *Compare Hoffman v. O'Malley*, 2020 WL 1915258, at *9 (N.D. Ohio Apr. 20, 2020) (citing *Dupler*, 413 N.E.2d at 1190–91), *with Buckner v. Gilliland*, 846 F. Supp. 2d 799, 804 (N.D. Ohio 2012) (citing *Hahn*, 331 N.E.2d 713).  However, as discussed, the allegations in Yacko's Complaint include both motive and knowledge of falsity.  Therefore, the Court need not decide this issue at this time.

because, inter alia, "[f]abrications of facts are clear examples of actual malice"); *A & B-Abell Elevator Co.*, 651 N.E.2d at 1293 ("Reckless disregard . . . is likely to be found where a story is fabricated by the defendant [or] is the product of his imagination." (citation omitted)); *Doe v. College of Wooster*, 2018 WL 838630, at *9 (N.D. Ohio Feb. 13, 2018) (finding sufficient allegation that statement "contained false and defamatory information about [plaintiff], specifically the false allegation that he had engaged in conduct which could be considered to be a criminal sex offense under Ohio law"); *Mitchell*, 518 F. Supp. 3d at 1093–94 (allegation that defendant's statements "were false" sufficient to show that defendant "made a knowingly false statement").

The Court finds that, at this stage, this is sufficient to allege actual malice and therefore overcome Gaeschke's assertion of qualified privilege. *See Osborn v. Knights of Columbus*, 2005 WL 469602, at *5 (N.D. Ohio Mar. 1, 2005) (holding as sufficient to allege malice allegation that "the acts herein were intentional and occurred with malice aforethought and are solely attributable to the Defendant"); *Buckner*, 846 F. Supp. 2d 799, 804 (N.D. Ohio 2012) (allegations sufficient where statement demonstrated that defendant "made it intentionally and maliciously in order to retaliate against plaintiff . . . and/or to protect herself from plaintiff's pursuit of [a false representation made by defendant in another matter]"); *Stearns v. Ohio Sav. Ass'n*, 472 N.E.2d 372, 374–75 (Ohio App. 8th Dist. Mar. 29, 1984) (summary judgment precluded where qualified privilege did not necessarily protect communication about "maliciously made" reasons for appellant's termination).

Accordingly, and for all the reasons set forth above, the Court **DENIES** Gaeschke's Motion to Dismiss as to Yacko's claim for defamation (Count Three).

28

**IV.    Conclusion**

For the reasons set forth above, the Court **GRANTS IN PART** and **DENIES IN PART** Gaeschke's Motion to Dismiss.  (Doc. No. 10.)   Specifically, Gaeschke's Motion to Dismiss is **GRANTED** as to Yacko's claims for age discrimination/aiding and abetting (Count One) and breach of contract (Count Two).   Gaeschke's Motion to Dismiss is **DENIED** as to Yacko's claim for defamation (Count Three).

**IT IS SO ORDERED.**

 *s/Pamela A. Barker*
PAMELA A. BARKER
Date:  February 28, 2024                    U. S. DISTRICT JUDGE